STATE OF NEBRASKA, APPELLEE, V.
JOSEPH H. MCDONALD, APPELLANT.
694 N.W.2d 204

Filed April 1, 2005.   No. S-04-516.

Stefanie A. Martinez for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

McCormack, J.

## NATURE OF CASE

In 1975, Joseph H. McDonald was convicted of first degree murder and sentenced to life imprisonment. The present appeal arises from the district court's denial of McDonald's motion for DNA testing pursuant to the DNA Testing Act (the Act), Neb. Rev. Stat. § 29-4116 et seq. (Cum. Supp. 2004). Under the Act, a court shall order testing upon a determination that, among other things, such testing was not effectively available at the time of trial. See § 29-4120(5). Because McDonald has failed to satisfy this requirement, we affirm.

## BACKGROUND

The following facts are taken from our opinion in *State v. McDonald*, 195 Neb. 625, 626-29, 240 N.W.2d 8, 9-11 (1976):

At approximately 3 a.m., on the morning of July 4, 1974, a police officer observed an automobile on fire in a trailer court at 19th and Read Streets in Omaha, Nebraska, and immediately placed a fire alarm. The Omaha fire department arrived some 5 minutes after the alarm was received, broke out all the windows of the car, and extinguished the flames. Following routine procedure, they opened the hood and the trunk of the burned car. The body of Lyle Ford was found in the trunk. There was a wound behind the left ear and streaks of blood on the neck and face.

Two officers of the Omaha police department began an immediate investigation by canvassing the area for witnesses. Several people residing in the trailer court provided information. Three witnesses had seen and heard two boys arguing with a man in the immediate area of the burned car sometime before the fire. One witness said the boys appeared to be trying to get money from the man. One witness said that one of the boys had on a light T-shirt. Another said that one of the boys had on a gold T-shirt and had long blonde hair, and the other boy was of "slighter" stature, possibly younger, and wore dark clothing. Another witness also said one boy had long blonde hair and was wearing a gold T-shirt. The manager of the trailer court advised one of the officers that a younger brother of an occupant of one of the trailers had been involved in another fire recently. The officers then went

to the trailer occupied by the defendant's brother, Tim McDonald, and talked with him. Tim said that Joe McDonald, the defendant, had been at the trailer at about 10:30 p.m. At that time, he had on a gold T-shirt and he had long blonde hair. The police officers also learned from witnesses that the defendant had been with a boy named Robert Johnson earlier in the evening, and that Johnson was of slighter stature and lived in the trailer court. This led the officers to the Johnson trailer. The officers knocked on the door and were admitted by Robert Johnson's mother. The officers asked if the defendant and Robert Johnson were there. She stated that they were in the living room sleeping. She let the officers in and they observed the defendant sleeping on the floor and Johnson sleeping on a couch. The officers awoke the boys and told them they wanted to talk to them. The boys got up and dressed. The defendant, who had long blonde hair, put on a yellow T-shirt and a pair of trousers. The officers noticed what appeared to be blood on the T-shirt and trousers. Johnson's physical appearance and clothing also matched the descriptions given to the officers. The officers then arrested both boys at approximately 6 a.m. and took them to the police station.

The medical evidence was that the victim was still alive at the time of the fire, and that he died from asphyxiation. The doctor also testified that it was possible that the victim could have died from the head wound but the fire intervened and killed him before that happened.

The evidence was conflicting as to the cause of the fire. The prosecution presented evidence tending to show that the fire had been set. The defense introduced evidence tending to show that the fire was accidental and caused by dropping a match or cigarette on the carpet, or by a short in the cigarette lighter.

At the time of the crime, the defendant, Joseph McDonald, was 16 years old, and Robert Johnson was 15 years old. Both of them testified at trial, Johnson as a prosecution witness, and the defendant on his own behalf.

In general outline, the testimony of the two boys substantially agreed. On July 3, 1974, the two boys were part

of a group of girls and boys who spent the evening drinking beer and riding around the city. They returned to the trailer park sometime after midnight. At approximately 1:45 a.m., the girls left in the car in which the group had been riding. At that time the boys were at least partially intoxicated.

The boys saw the victim, Lyle Ford, in his car in the trailer park even before the girls left. He appeared to be drunk and was having trouble lighting a cigarette. After the defendant had an additional beer, he and Johnson had a brief argument with the victim and attempted to get some money from him on the pretext that he had backed into the car of the defendant's brother, but they were unsuccessful.

From this point on the testimony of the two boys, McDonald and Johnson, is in substantial agreement as to what they did together but is sharply divergent and conflicting as to which one suggested or performed certain acts. The boys went to the Johnson trailer, got a shotgun, broke it down, took the shotgun barrel, and went back to the victim's car. The victim was standing behind his car and the trunk was open.

Johnson testified that the defendant hit the victim on the head with the gun barrel, the victim fell into the trunk, and Johnson helped put the rest of the victim's body into the trunk. He testified that the defendant suggested robbing the victim, and that the defendant took the victim's wallet before they closed the trunk lid. He also testified that the defendant deliberately set the car on fire afterward. The defendant testified that Johnson hit the victim and the defendant helped put the victim's body into the trunk. The defendant testified that he did not know Johnson was going to rob the victim until afterward when Johnson gave him $20 from the victim's billfold, and then threw the billfold away. The defendant also testified that Johnson got into the car afterward and used the cigarette lighter to light a cigarette. The defendant did not see Johnson set the car on fire, but testified that he, the defendant, did not set it on fire.

When the boys left the victim's car, they returned to the Johnson trailer, put the shotgun back together, and left it there. They then went to another trailer to get a crowbar

with which to open the trunk, but the woman would not let them in. As they were returning to the Johnson trailer, they could see the victim's car burning. They went into the Johnson trailer, watched the activity around the fire for awhile, and then went to sleep. The shotgun, the victim's wallet, and money taken from defendant's person were all received in evidence.

The jury found the defendant guilty and he was sentenced to life imprisonment.

On November 7, 2003, McDonald filed a motion under the Act seeking DNA testing of exhibits 32 (McDonald's yellow T-shirt) and 33 (his pants) that were received into evidence at his trial. He asserted that DNA testing would reveal that the purported bloodstains on his clothes were actually "red rouge," a metal-polishing substance he used at his place of employment. McDonald also filed a motion for appointment of counsel under the Act.

A hearing was held on the matter on April 2, 2004. No one testified, and only one exhibit was received into evidence: an affidavit from a law clerk in the Douglas County Attorney's office. The law clerk averred that he called the Omaha Police Department's property and records divisions about the shirt and pants and was told that they had been destroyed on an unknown date. Based upon the law clerk's affidavit, the district court overruled McDonald's motions for DNA testing and appointment of counsel. McDonald appeals.

## ASSIGNMENTS OF ERROR

In his assignments of error, McDonald claims that (1) the district court erred in overruling his motion for DNA testing and appointment of counsel, (2) exhibits 32 and 33 were destroyed without a court order, (3) his due process rights were violated by the destruction of exhibits 32 and 33, and (4) his due process rights were violated by the suppression of exculpatory evidence by the prosecution.

## STANDARD OF REVIEW

A motion for DNA testing is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Lotter*, 266 Neb. 758, 669 N.W.2d 438 (2003).

## ANALYSIS

The initial step toward obtaining relief under the Act is for a person in custody to file a motion requesting forensic DNA testing of biological material. See § 29-4120. Forensic DNA testing is available for any biological material that is related to the investigation or prosecution that resulted in the judgment; is in the actual or constructive possession of the state, or others likely to safeguard the integrity of the biological material; and either was not previously subjected to DNA testing or can be retested with more accurate current techniques. See § 29-4120(1). Once these thresholds are met, the court shall order testing upon a determination that such testing was not effectively available at the time of trial, that the biological material has been retained under circumstances likely to safeguard its integrity, and that the testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced. See, § 29-4120(5); *State v. Buckman*, 267 Neb. 505, 675 N.W.2d 372 (2004).

We affirm the district court's judgment because McDonald apparently agrees that testing was available at the time of trial to determine whether any stains were blood or a polishing substance. See brief for appellant at 6-7 ("[a]lthough DNA testing was not developed at the time of the trial, testing to determine whether or not the red substance was in fact blood was readily available and considered a common, standard practice"). As mentioned, under § 29-4120(5), the court shall order testing upon a determination that such testing was not effectively available at the time of trial. Because such testing *was* available at the time of his trial, McDonald is not entitled to DNA testing 30 years later.

McDonald also argues on appeal that (1) his due process rights were violated under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), when the State failed to inform him of any test results on the shirt and pants and (2) his due process rights were violated under *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), and *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), when the State destroyed his shirt and pants. Assuming without deciding that such issues are properly raised in this type of proceeding, the record does not indicate that either

theory was presented to the district court. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *State v. Wester, ante* p. 295, 691 N.W.2d 536 (2005).

AFFIRMED.